UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS KERLINSKY,<br>     Plaintiff | )<br>)<br>)<br>)<br>) |
| v. | ) Civil Action No. 09-30136-MAP<br>)<br>)<br>) |
| SANDOZ, INC. a/k/a SANDOZ<br>PHARMACEUTICAL CORP.,<br>UNITED STATES DEPARTMENT OF<br>OF VETERANS AFFAIRS, and<br>MAIN LINE HOSPITALS, INC. d/b/a<br>LANKENAU HOSPITAL,<br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |

<u>REPORT AND RECOMMENDATION WITH REGARD TO MOTIONS TO DISMISS
FILED BY MAIN LINE HOSPITALS, INC. d/b/a LANKENAU HOSPITAL and SANDOZ,
INC. a/k/a SANDOZ PHARMACEUTICAL CORP. (Document Nos. 7 and 12)</u>
January 21, 2010

NEIMAN, U.S.M.J.

  Louis Kerlinsky ("Plaintiff"), a Massachusetts resident proceeding *pro se*, brings this putative class action against three defendants: (1) a Pennsylvania hospital, Main Line Hospitals, Inc. d/b/a Lankenau Hospital ("Lankenau Hospital"); (2) a Colorado pharmaceutical company, Sandoz, Inc. a/k/a Sandoz Pharmaceutical Corp. ("Sandoz"); and (3) the United States Department of Veterans Affairs ("USDVA"). Lankenau Hospital and Sandoz have filed motions to dismiss which have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). The USDVA, for its part, has tendered an answer. For the reasons that follow, the court will

recommend that Lankenau Hospital's motion to dismiss be allowed in full and that Sandoz's motion to dismiss be allowed in part. In addition, the court will recommend that any remaining class action claims, including those against the USDVA, be dismissed *sua sponte*.

## I. STANDARDS OF REVIEW

When faced with a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim -- the legal basis cited by both Lankenau Hospital and Sandoz -- the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992). In addition, *pro se* pleadings must be construed liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Recently, the Supreme Court made clear that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), only a complaint that states a plausible claim for relief, on its face, survives a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). In *Iqbal*, the Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

In some contrast, when faced with a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction -- another legal basis for Lankenau Hospital's motion -- the plaintiff carries the burden of proving that jurisdiction lies with the court.

*Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) (citing cases). To succeed in this regard, the plaintiff "must show that the Massachusetts long-arm statute grants jurisdiction and, if it does that the exercise of jurisdiction under the statute is consistent with the constitution." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). To meet this burden, the plaintiff "must go beyond the pleadings and make affirmative proof" of material jurisdictional facts. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (citations and internal quotation marks omitted). It should be noted, however, that a court in this instance "does not act as a fact finder; to the contrary, it ascertains only whether the facts, duly proffered, fully credited, support the exercise of personal jurisdiction." *Alers-Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 84 (1st Cir. 1997).

II. BACKGROUND

For present purposes, the background can be summarized quickly from Plaintiff's complaint. A few additional facts with regard to personal jurisdiction are addressed in the court's discussion below dealing with Lankenau Hospital's motion to dismiss.

This case arises out of a medical incident in Philadelphia on September 1, 2006, during which Plaintiff's heart stopped beating and he stopped breathing. (Compl. ¶¶ 4-7.) At approximately 7:00 p.m., Plaintiff was taken by ambulance to Lankenau Hospital. (See *id.*) Just prior to the incident, Plaintiff took a first dose of the drug Terazosin -- which was manufactured by Sandoz and prescribed by a USDVA clinic in Springfield, Massachusetts -- for high blood pressure and an enlarged prostate gland. (*Id.* ¶¶ 7-8,

25.)

Plaintiff allegedly suffered from "syncope and collapse" and was diagnosed at Lankenau Hospital with a heart condition for which the hospital recommended installation of a pacemaker. (*Id.* ¶¶ 6, 9.)  On September 5, 2006, Plaintiff left Lankenau Hospital and entered Baystate Medical Center in Springfield. (*Id.* ¶ 10.) Doctors at that hospital, however, examined Plaintiff and determined that he had a good heart which needed no pacemaker. (*Id.* ¶ 11.)  In other words, Plaintiff appears to allege that the medical incident that occurred on September 1, 2006, was not related to any heart condition as diagnosed by Lankenau Hospital but, rather, was a result of the Terazosin medication he had taken for the first time that day. (See *id.* ¶¶ 12, 36.)

Plaintiff admits that the medical literature he received from the USDVA clinic about Terazosin included certain warnings:  *e.g.*, "[t]ake the first dose at bedtime to minimize the chances of getting up dizzy or fainting"; "[m]ay cause drowsiness"; "[t]o avoid dizziness or fainting get up slowly from a lying or seated position especially when you first start using this drug"; and "[l]ightheadedness or dizziness upon standing may occur, especially after the first dose." (*Id.* ¶¶ 14-15, 17, 22.)  Nonetheless, Plaintiff asserts that the warnings were inadequate in that they did not call his attention to the risks of his heart stopping and his inability to breathe due to the taking of the first dose. (*Id.* ¶ 23.)  According to Plaintiff, he was essentially "unaware of any danger arising from taking Terazosin" and "would not have taken any Terazosin had he been adequately warned of what it would cause him." (*Id.* ¶¶ 21, 24.)

Plaintiff's complaint includes the following ten, individualized causes of action:

breach of warranty by Sandoz (Count 1), negligence by Sandoz (Count 2), misrepresentation and deceit by Sandoz (Count 3), violations of Mass. Gen. L. ch. 93A ("chapter 93A") by Sandoz (Count 4), violations of state and federal consumer protection laws by Sandoz (Count 5), negligence by the USDVA (Count 6), misrepresentation and deceit by the USDVA (Count 8), negligence by Lankenau Hospital (Count 9), breach of contract by Lankenau Hospital (Count 10), and misrepresentation and deceit by Lankenau Hospital (Count 11). (*Id.* ¶¶ 1-49, 52-63.) In addition, Plaintiff purports to make two "class action" claims, one against the USDVA (Count 7) and another under chapter 93A against all three defendants (Count 12). (*Id.* ¶¶ 50-51, 64-78.)

### III. DISCUSSION

The court begins with Lankenau Hospital's motion to dismiss and will recommend that it be allowed in full. The court then turns to Sandoz's motion to dismiss and will recommend that it be allowed as to Counts 3 through 5 and 12, but denied as to Counts 1 and 2. In discussing Sandoz's motion, the court will also recommend that any remaining class action claims, including two against the USDVA, be dismissed *sua sponte*.

A. LANKENAU HOSPITAL'S MOTION TO DISMISS

As noted, Plaintiff has sued Lankenau Hospital for negligence (Count 9), breach of contract (Count 10), and misrepresentation and deceit (Count 11), and also listed Lankaneu Hospital as a defendant in his putative chapter 93A class action (Count 12). In its motion, Lankenau Hospital asserts that the claims against it should be dismissed

for lack of personal jurisdiction and on the merits. Each argument, in this court's view, warrants such dismissal.[1]

### 1. Personal Jurisdiction

Lankenau Hospital's personal jurisdiction argument can be dealt with in short order. In essence, Plaintiff has not borne his burden to "go beyond the pleadings and make affirmative proof" of material jurisdictional facts, *Boit*, 967 F.2d at 675, "show that the Massachusetts long-arm statute grants jurisdiction," *Daynard*, 290 F.3d at 52, and demonstrate "that the exercise of jurisdiction under the statute is consistent with the constitution," *id.* Rather, in a two-paragraph, handwritten opposition to Lankenau Hospital's motion, Plaintiff simply asserts that the hospital, upon discharge, advised him "to follow up with a cardiologist in his home town" and, hence, acted in a manner that was "purposefully directed toward the forum state." (Pl.'s Opp'n Mot. to Dismiss by Lankenau Hospital at 1, 2.) Needless to say, this response is woefully inadequate. *See*, *e.g.*, *Daynard*, 290 F.3d at 50 ("The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant."); *Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921, 923-24 (D. Mass. 1994) (noting that the plaintiff "must set forth, through affidavits and other competent evidence, specific facts on each jurisdictional element") (citing *Boit*, supra). That is reason enough to allow Lankenau Hospital's

---

[1] Lankenau Hospital also asserts that it should be dismissed due to insufficient service of process -- because it only received a copy of the complaint in the mail -- as well as for improper venue. (See Lankenau Hospital's Mem. Supp. of Mot. Dismiss Pl.'s Compl. at 7-8.) In this court's estimation, it is unnecessary to reach these alternative dismissal assertions given the strength of Lankenau Hospital's personal jurisdiction and merits arguments.

motion.  *Cf. United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.").

In contrast, Lankenau Hospital has filed a detailed, unrebutted affidavit which notes that the hospital "owns and operates a healthcare facility" in Pennsylvania, "does not have regular, systematic or continuous contacts with Massachusetts," had "contacts with Plaintiff [that] all occurred in Pennsylvania," and had its "last contact" with him on September 5, 2006, in Pennsylvania.  (Lankenau Hospital's Mot. Dismiss Pl.'s Compl., Ex. ¶¶ 2-4.)  Perhaps more importantly, Lankenau Hospital has also cited unrebutted legal authority which demonstrates that there can be no general jurisdiction over it in Massachusetts, *see Noonan Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998), how there is no evidence that "the litigation directly relates to or arises out of [its] contacts with the forum," *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999), that it did not "purposefully and voluntarily direct[] [its] activities toward the forum," *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001), and how it would be "unreasonable" to allow jurisdiction in Massachusetts over a Pennsylvania hospital for treatment rendered in Pennsylvania, *see Phillips Exeter Acad.*, 196 F.3d at 288.  For these reasons too, the court believes that Lankenau Hospital should be dismissed on personal jurisdiction grounds.

  2. Merits

Even if Plaintiff were to survive Lankenau Hospital's personal jurisdiction argument, he fails to address, at all, its alternative "merits" argument, *i.e.*, that the

counts targeting the hospital fail to state claims upon which relief may be granted. For example, as the hospital notes, Plaintiff has not mentioned in any way how he can bring a Pennsylvania-based professional negligence claim in Massachusetts. Plaintiff has also failed to plead either "damages" or "causation," critical elements undergirding all of his claims against the hospital. *See Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) ("Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.") (citations and internal quotation marks omitted). Because these merits-based arguments are persuasive and remain unrebutted, the court has little choice but to recommend that Lankenau Hospital's motion to dismiss be allowed in full.

B. Sandoz's Motion to Dismiss

Like Lankenau Hospital, Sandoz attacks the merits of Plaintiff's claims in which it is named, *i.e.*, the causes of action alleging breach of warranty (Count 1), negligence (Count 2), misrepresentation and deceit (Count 3), violations of chapter 93A (Count 4), and violations of state and federal consumer protection laws (Count 5). In addition, Sandoz makes an argument regarding Plaintiff's chapter 93A class action claim (Count 12). For the reasons that follow, the court will recommend that Sandoz's motion be allowed as to Counts 3 through 5 and 12, but denied as to Counts 1 and 2. The court will also recommend that any remaining class action allegations in Counts 7 and 12 against the USDVA be dismissed *sua sponte*.

    1. Misrepresentation and Deceit (Count 3), Violations of Chapter 93A (Count 4) and Violations of State and Federal Consumer Protection Laws (Count 5)

Unlike Counts 1 and 2, discussed below, Counts 3 through 5 -- which allege fraud and deceit as well as related violations of chapter 93A and other state and federal consumer protection laws -- are subject to the heightened pleading requirements of Rule 9(b).  Accordingly, Plaintiff "must state with particularity the circumstances constituting [the] fraud."  Fed. R. Civ. P. 9(b).  *See Freeman v. MetLife Group, Inc.*, 583 F. Supp. 2d 218, 223 (D. Mass. 2008) (deeming misrepresentation and deceit "'a species of fraud'" and, hence, subject to Rule 9(b)) (quoting *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)); *JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 108 (D. Mass. 2006) (equating, for pleading purposes, a chapter 93A consumer protection claim with claims for deceit and fraudulent misrepresentation when both are supported by the same operative facts).  Plaintiff must "not only specify[] the false statements and by whom they were made but also identify[] the basis for inferring scienter."  *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

Here, however, Plaintiff's allegations in Counts 3 through 5 are nothing more than shells of fraud-based causes of action.  In Count 3, Plaintiff simply alleges that "Sandoz misrepresented and deceived [him], the public, and buyers of its Terazosin regarding its effects, safety, and risks."  (Compl. ¶ 41.)  Similarly in Count 4, Plaintiff merely asserts that "Sandoz [sic] above acts were unfair and deceptive and willfully and knowingly violated [chapter] 93A."  (*Id.* ¶ 43.)  And in Count 5, Plaintiff only contends that "Sandoz violated Federal Consumer protection laws and also other states' consumer protection laws including 38 U.S.c. [sic] sec. 1151."  (*Id.* ¶ 46.)  Even

9

assuming these allegations sufficiently specify "the false statements and by whom they were made," which they do not, in no way do they identify "the basis for inferring scienter." *Cardinale*, 567 F.3d at 13. *See also* BLACK'S LAW DICTIONARY 1463 (9th ed. 2009) (defining "scienter" as "[a] mental state consisting in an intent to deceive, manipulate, or defraud"). As a result, the court will recommend that Sandoz's motion be allowed with respect to Counts 3 through 5.[2]

    2. Breach of Warranty (Count 1) and Negligence (Count 2)

In contrast to Counts 3 through 5, the court will stop short of recommending that Plaintiff's breach of warranty and negligence causes of action against Sandoz (Counts 1 and 2) be dismissed at this time. For one thing, they are not subject to Rule 9(b)'s heightened pleading requirements. More directly, however, the court finds that these claims are supported by "facial plausibility," *i.e.*, the complaint, albeit barely, contains sufficient "factual content that allows the court to draw the reasonable inference that [Sandoz] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. (See, *e.g.*, Compl. ¶¶ 16-18 (alleging that the "only warning" on the vials of Terazosin manufactured by Sandoz was "[m]ay cause drowsiness"), 23 ("The warnings by . . . Sandoz . . . regarding the dangers of Terazosin were inadequate and did not call [P]laintiff's attention to the risks of his heart stopping beating and his inability to breathe

---

[2] Count 5 suffers from another infirmity. The only statute Plaintiff invokes there, 38 U.S.C. § 1151, appears to authorize veterans to receive compensation from VA hospitals for alleged acts of malpractice. *See*, *e.g.*, 38 U.S.C. § 1151(a)(1)(A). This court, however, is unaware of any provision in that statute which might impose liability on a private pharmaceutical company like Sandoz, or even provide Plaintiff with a right of action against Sandoz, in the circumstances presented here.

due to the taking of the first capsule of Terazosin,"), 24 ("Plaintiff would not have taken any Terazosin had he been adequately warned of what it would cause him."), 25 (alleging that USDVA doctor stated that "[i]n my opinion he probably passed out and was hospitalized because of Terazosin that he had taken for the first time on 9-1-06") and 26 (asserting that Plaintiff's physician wrote that "Mr. Kerlinsky experienced first dose effect syncope from Terazosin in 9/06").)

To be sure, Sandoz implores the court to dismiss Counts 1 and 2 because (1) "syncope" is "fainting"; (2) Plaintiff concedes that he was warned about "dizziness, light-headedness, and fainting"; and (3), as a result, Plaintiff cannot sue for any failure to warn about syncope. (See Sandoz's Mem. Law Supp. of Mott. Dismiss at 1-3.) In the court's view, however, Sandoz treats Plaintiff's complaint far too simply. As indicated, Plaintiff appears to be concerned with much more than fainting; rather, he specifically, and plausibly, alleges that "Sandoz . . . did not call [his] attention to the risks of his *heart stopping beating* and his *inability to breathe* due to the taking of the first capsule of Terazosin." (Compl. ¶ 23.) Moreover, courts are often reluctant to prematurely dismiss plausibly pled claims prior to any discovery whatsoever, particularly when the plaintiffs are *pro se*. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996) ("It is, of course, true that at the start of complex litigation a party may not have all the facts, so courts normally hesitate to dismiss under Fed. R. Civ. P. 12(b)(6) at the outset."); *Fernandez-Vargas v. Pfizer Pharm., Inc.*, 394 F. Supp. 2d 407, (D.P.R. 2005) (deeming Rule 12(b)(6) dismissal "premature when discovery can easily resolve this issue"). *See also Instituto de Educacion Universal Corp.*, 209 F.3d at 23 (discussing

liberality afforded *pro se* litigants). Accordingly, the court will recommend that Sandoz's motion with respect to Counts 1 and 2 be denied.[3]

### 3. Count 12 and any Remaining Class Action Allegations

As a final matter, Sandoz argues that Plaintiff, as a *pro se* litigant, is not authorized in Count 12 to serve as representative of a putative class. The court agrees. *See, e.g.*, *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (class representatives cannot appear *pro se*); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[W]e consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others."); *Dutkiewicz v. Foster*, 88 F.R.D. 85, 86 (D. Mass. 1980) ("[P]ro se plaintiffs may only appear and practice on their own behalf, not on the behalf of an alleged class."). *See also* 28 U.S.C. § 1654 (noting that "parties may plead and conduct *their own cases*") (emphasis added); Rule 83.5.3(c) of the United States District Court for the District of Massachusetts ("A person who is not a member of the bar of this court . . . will be allowed to appear and practice before the court only in his own behalf.").

Granted, the parties agree that, at one time, Plaintiff was licensed as an attorney in Massachusetts and, indeed, practiced before this court. As Sandoz points out, however, Plaintiff was suspended from the practice of law in Massachusetts for three years, as evidenced by a 1999 decision of the Supreme Judicial Court. *See In re Kerlinsky*, 704 N.E.2d 503 (1999). Moreover, there is no evidence that Plaintiff's

---

[3] It is also worth noting that the USDVA, against whom similar claims have been made, has not moved to dismiss the complaint, but has answered Plaintiff's claims.

license has ever been reinstated in this state.  *See* http://massbbo.org/bbollokup.php (last visited Jan. 21, 2010).  This court's own records also indicate that Plaintiff is no longer registered to practice as an attorney in this district and, in fact, is listed, perhaps improperly, as being "disbarred."  *Cf. Allnew v. City of Duluth*, 983 F. Supp. 825, 831 (D. Minn. 1997) (finding disbarred attorney inadequate as a class representative).  Further, Plaintiff himself has signed his complaint as proceeding *pro se*.

Even were Plaintiff to demonstrate that he is currently licensed to practice as an attorney in this court (see, *e.g.*, Pl.'s Opp'n Sandoz's Mot. Dismiss at 2 (in which Plaintiff asserts that he "is presently an attorney authorized to practise [sic] law in the United States Supreme Court, U.S. Courts of Appeal for the First and Second Circuits and their district courts and has never been suspended from practise [sic] in said courts")), he is not otherwise qualified pursuant to Fed. R. Civ. P. 23(g) to serve as class counsel.  There is a "long-standing general prohibition against even attorneys acting as both class representative and counsel for the class."  *Huddleston v. Duckworth*, 97 F.R.D. 512, 514 (N.D. Ind. 1983) (collecting cases).  *See also Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976) (describing the untenable "conflict of interest between the class member plaintiff qua plaintiff and the class member plaintiff qua counsel") (footnote omitted).  Accordingly, the court will recommend that Sandoz's motion with respect to Count 12 be allowed.  Similarly, the court will recommend dismissal *sua sponte* of Count 7, the other putative "class action" Plaintiff purports to assert against the USDVA, as well as any remaining portion of Count 12 targeting the USDVA.

IV. CONCLUSION

For the reasons stated, the court recommends as follows: that Lankenau Hospital's motion to dismiss be ALLOWED in full; that Sandoz's motion to dismiss be ALLOWED as to Counts 3 through 5 and 12, but DENIED as to Counts 1 and 2; and that Count 7 and any remaining portion of Count 12 be DISMISSED *sua sponte*.[4]

DATED: January 21, 2010

                                         /s/ Kenneth P. Neiman
                                         KENNETH P. NEIMAN
                                         U.S. Magistrate Judge

---

[4] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.